M. Blanche Nadeau v. Commissioner.
Nadeau v. Commissioner
Docket No. 17649.
United States Tax Court
1949 Tax Ct. Memo LEXIS 129; 8 T.C.M. (CCH) 658; T.C.M. (RIA) 49177; July 6, 1949
M. Blanche Nadeau, pro se. Melvin L. Sears, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $344.96 in the petitioner's income tax for 1945. The only issue for decision is whether the Commissioner erred in disallowing a deduction of $1,285.25 and in failing to allow one of $82.79 under section 23 (a). Findings of Fact The petitioner filed a return for 1945 with the collector of internal revenue for the *130 district of Maine. She has resided in Waterville, Maine since 1912. Her husband died in 1940 and since that time she has made her home with her parents. She was a taxpayer, real estate owner, and voter in Waterville at all times material hereto. She was employed there as a secretary for a number of years prior to 1942. Her wages had risen to $2,750 in 1938, had fallen off to $1,530 in 1939, and had risen to $2,213.60 in 1941. The petitioner in 1942 had assets worth between $13,000 and $15,000, including stocks, bonds, and real estate. She spent considerable time studying the stock market in order to invest her funds profitably. She also consulted with an official of a bank in Waterville in regard to her investments. She borrowed money from this bank to increase her investments. The amount of borrowed money which she was using in her investments from 1942 through 1945 ranged from $3,500 to $10,000. She negotiated or renegotiated three or four loans each year for the years 1942 through 1944 and one in 1946. She did not negotiate or renegotiate any loans during 1945. Her equity in securities in 1946 was from $33,000 to $36,000. She made 13 purchases and two sales in 1941, had *131 one transaction in 1942, nine in 1943, seven in 1944, none in 1945 or 1946, nine in 1947 and one in 1948. Her purchases in 1941 ranged from $227.50 to $1,088.55. The petitioner's income from dividends, interest, and gains from sales or exchanges, less interest paid and net losses, ranged from a loss of $295.23 in 1941, in which year she had a net loss of $834.82 from a sale, to $8,016.44 in 1947, in which year she had a gain of $4,789.50 from a sale. She received interest and dividends during 1945 in the amount of $2,151.39 and paid interest in the amount of $398.85. The petitioner felt that she could not obtain employment in Waterville at a proper salary and began to look elsewhere for employment. She had work outside of Waterville in the latter part of 1942, and in 1943 she went to Boston to seek employment. The position mentioned in the next paragraph she obtained through an employment agency in Boston. The petitioner was employed from February 18, 1943 to April 27, 1946 on a war project in the capacity of administrative assistant to the administrative officer for the United States Treasury Department, Procurement Division, on a contract of the United States Government in *132 the accounting department of E. B. Badger & Sons Co. at Boston, Massachusetts. She lived during that period in a rented room in Boston. Her salary for 1945 from this employment was $2,566.14. She reported that amount on her return for 1945 and deducted on that return the amount of $1,285.25, representing the cost to her of meals and lodging in Boston during 1945. The petitioner during 1945 made trips about once a month by railroad between Boston and Waterville, Maine. The total cost to her of those trips was about $82.79. The trips were made to visit her parents and also for the purpose of conferring with the bank official who advised her on financial matters. She also corresponded with this official while she was in Boston in regard to her financial transactions. E. B. Badger & Sons Co. offered the petitioner other employment when the war project was completed in 1946, but she declined the offer. She remained in Boston until August 15, 1946, at which time she returned to Waterville on account of the illness of her mother. She has remained in Waterville unemployed since that time. The Commissioner, in determining the deficiency, disallowed the deduction of $1,285.25. The petitioner's *133 post of duty and only place of employment during 1945 was Boston, Massachusetts. Opinion MURDOCK, Judge: The petitioner contends that her principal business was the investment of her funds, which business she carried on in Waterville, Maine; she went to Boston for the purpose of obtaining additional money to invest in this business; and the railroad fare and her board and lodging while in Boston were ordinary and necessary expenses of her business, that is, were traveling expenses while away from home in pursuit of a trade or business. The facts of the matter are, however, that the petitioner went to Boston in the early part of 1943 because she was not satisfied with the wages she could obtain in Waterville and thought that she could do better in Boston; she obtained employment in Boston which lasted from February 1943 until the spring of 1946; she could have continued with the same company had she cared to do so; and she was employed during all of the taxable year 1945 in Boston. Her employment in Boston would indicate that Boston was her home for the purpose of section 23 (a) (1) and she would not be entitled to any travel expenses. . *134 Her claim that her principal business was investing money in Waterville, Maine during 1945 is not supported by the evidence. She had securities which she was watching and which produced a large part of her income. But she made no purchases or sales of securities and negotiated no loans during 1945. She had an advisor in the bank in Waterville whom she consulted and with whom she corresponded in regard to her investments, but the record does not show that she went to Waterville to consult him during 1945. These activities would scarcely represent the carrying on of a business, cf. , or justify a deduction. . Furthermore, if her activities in Waterville are to be regarded as another business, in addition to the employment which she had in Boston, then this case is not distinguishable from the case of . The petitioner also contends that the expenditures here in question would be deductible under section 23 (a) (2). The record fails to show that the amounts expended for board and lodging were in any sense incurred for the production or collection of *135 income from the petitioner's securities or for the management, conservation, or maintenance of her securities. If she had expended money while in Boston during 1945 to go to Waterville primarily for the purpose of consulting her financial advisor in connection with those securities, that expense might be deductible under this section as an amount paid for the management, conservation or maintenance of property held for the production of income. However, the record does not show that the petitioner made any trip during 1945 primarily to consult this advisor. She testified that she usually went home about every month to visit and to talk to her advisor at the bank. But she did not say that any particular trip during 1945 was made primarily for the purpose of talking to her advisor, nor did she say that she got advice from him in 1945 on any of these trips. Her theory was that her trips were made from Waterville to Boston, not from Boston to Waterville, which may explain her failure to go into any detail on this subject. Since the entire amount claimed is only $82.79, and since the record does not show what part, if any, of this might be deductible under section 23 (a) (2), no arbitrary *136 allocation on the part of the Court seems appropriate. Decision will be entered for the respondent.